Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Attorneys for Plaintiff Gabriela Soto Hurtado

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA SOTO HURTADO, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>                    Plaintiff,<br><br>        vs.<br><br>SWEET EARTH, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.:  21-cv-04894-VKD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, *ET SEQ.***<br><br>(1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);<br>(2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);<br>(3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods);<br>(4) Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods);<br>(5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records);<br>(6) Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment);<br>(7) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses);<br>(8) Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;<br>(9) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and |

(10)    Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

Plaintiff Gabriela Soto Hurtado, individually and on behalf of all other members of the public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved employees, alleges as follows:

## JURISDICTION AND VENUE

1. This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover wages and all other available relief on behalf of Plaintiff and all similarly situated current and former non-exempt, hourly paid employees of Defendants, and a non-class representative enforcement action brought pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

3. Venue is proper in this Court, because this case was originally filed in the Superior Court of California for the County of Monterey. Venue properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a), 1391(b), and 1441(a).

4. The PAGA statute authorizes aggrieved employees to sue directly as the proxy of the State of California for civil penalties for violations of various provisions in the California Labor Code.

///

///

**THE PARTIES**

5.     Plaintiff Gabriela Soto Hurtado is a resident of Castroville, in Monterey County, California.  Defendants employed Plaintiff as an hourly paid, non-exempt Level II Sanitation/Dishwasher from approximately February 2019 to July 2020.  Plaintiff worked for Defendants at their facility in Moss Landing, California.  During her employment, Plaintiff typically worked 11-12 hours per day, and five (5) to six (6) days per week.  Plaintiff's primary job duties included, without limitation, cleaning and sanitizing machines and keeping track of chemical inventory.

6.     SWEET EARTH, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

7.     Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

8.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers of SWEET EARTH, INC., at all relevant times.

9.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, SWEET EARTH, INC. and/or DOES 1 through 10 (collectively, "Defendants" or "SWEET EARTH"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of

Defendants.

10.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

11.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## GENERAL ALLEGATIONS

12.    Defendants are a producer of plant-based frozen foods that are sold in grocery stores throughout the United States.  Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their company headquarters in Moss Landing, California, which is responsible for the recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies and meal and rest period policies, to employees throughout California.

13.    In particular, Plaintiff and class members, on information and belief, received the same standardized documents and/or written policies.  Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.  Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire.

14.    Upon information and belief, Defendants maintain a centralized Payroll department at their company headquarters in Moss Landing, California, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations and jobsites in California, including Plaintiff

and class members.  Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations.  Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

15.    Defendants continue to employ non-exempt or hourly paid employees in California.

16.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

17.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

18.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

19.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to be paid at a regular rate of pay, and corresponding overtime rate of pay, that included as eligible income all remuneration required by law, including but not limited to, all income derived from incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of compensation, but failed to include all forms of remuneration in calculating the regular rate of pay for Plaintiff and class members.

FIRST AMENDED CLASS ACTION COMPLAINT

20.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

21.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

22.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

23.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with

California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

24.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the California Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

25.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and/or class members were entitled to timely payment of all wages earned upon termination of employment. In violation of the California Labor Code, Plaintiff and/or class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or sick leave pay, within permissible time periods.

26.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or sick leave pay, within permissible time periods.

27.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to cover the costs and expenses Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug tests, but failed to do so.

28.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive sick leave benefits to be paid at a regular rate of pay, that included, as eligible income, all income derived from incentive pay,

nondiscretionary bonuses, shift differential pay, and/or other forms of compensation, but failed to include all forms of remuneration in calculating the regular rate of pay for sick leave pay.

29. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

30. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that Defendants had a duty to provide Plaintiff and class members with written notice of the material terms of their employment with Defendants as required by the California Wage Theft Prevention Act, but failed to do so.

31. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

## PAGA REPRESENTATIVE ALLEGATIONS

32. At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

33.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

34.    Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or former employees and one or more of the alleged violations were committed against them.

35.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

(a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

(b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

36.     Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)     The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)     An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)     The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

37.     On June 4, 2021, Plaintiff provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section

2699.3.  Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-834067-21.  A true and correct copy of Plaintiff's written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

38.    As of the filing date of this complaint, over 65 days have passed since Plaintiff sent the notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

39.    Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

40.    Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . .  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ."  Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

41.    Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

42.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

43.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action on her own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

45.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

46.     Plaintiff's proposed class consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California, within four years prior to the filing of the initial complaint until the date of trial ("Class").

47.     Plaintiff's proposed subclass consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

48.     Members of the Class and Subclass are referred to herein as "class members."

49.     Plaintiff reserves the right to redefine the Class and Subclass and to add additional subclasses as appropriate based on further investigation, discovery,

and specific theories of liability.

50.    This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

51.    According to Defendants' removal papers, there are at least 450 non-exempt, hourly paid employees working for Defendants across California during the relevant period.  Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

52.    Plaintiff's claims are typical of those of the class members, because Plaintiff suffered the violations set forth in this First Amended Complaint.

53.    Plaintiff will adequately protect the interests of class members. Plaintiff has no interests that are adverse to or conflict with class members and are committed to the vigorous prosecution of this action.  To that end, Plaintiff has retained counsel who is competent and experienced in handling class actions on behalf of employees.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the amount suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

55.    There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

(a)    Whether Defendants required Plaintiff and class members to work over eight (8) hours per day, over twelve (12) hours per

day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiff and class members;

(b)    Whether Defendants failed to properly calculate the "regular rate" of pay on which Plaintiff's and class members' overtime rate of pay was based;

(c)    Whether Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked;

(d)    Whether Defendants failed to provide Plaintiff and class members with meal periods;

(e)    Whether Defendants failed to authorize and permit Plaintiff and class members to take rest periods;

(f)    Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(g)    Whether Defendants maintained accurate payroll records as required by California Labor Code section 1174(d);

(h)    Whether Defendants failed to pay earned overtime wages, minimum wages, meal and rest period premiums, and/or sick leave pay, due to Plaintiff and/or class members upon their discharge;

(i)    Whether Defendants failed timely to pay overtime wages, minimum wages, meal and rest period premiums, and/or sick leave pay, due to Plaintiff and class members during their employment;

(j)    Whether Defendants failed to pay Plaintiff and class members for the costs of mandatory physical examinations and/or drug testing;

FIRST AMENDED CLASS ACTION COMPLAINT

(k)  Whether Defendants failed to properly calculate the "regular rate" of pay upon which Plaintiff's and class members' sick leave rate of pay was based;

(l)  Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(m)  Whether Defendants failed to provide written notice of information material to Plaintiff's and class members' employment with Defendants;

(n)  Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(o)  The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

## FIRST CAUSE OF ACTION

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

56.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

57.  Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

58.  California Labor Code section 1198 and the applicable IWC Wage

Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

59.    Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

60.    The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and class members working more than twelve (12) hours in a day, overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

61.    California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

62.    During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

63.    First, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their facilities while assigning heavy workloads, which led to a failure to provide Plaintiff and class members with adequate meal period coverage, because there were too few employees on duty to handle the workload.  As a result of this inadequate meal period coverage, Plaintiff and class members were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period.  For example, Defendants' management would interrupt Plaintiff's meal periods in-person and instruct her to spend 15-20 minutes of her meal period sanitizing food processing machinery. Furthermore, Defendants had a practice of failing to adhere to a schedule of meal periods, which further caused Plaintiff and class members to not be relieved of their duties and led them to perform work during unpaid meal periods.

64.    Second, Defendants had, and continue to have, a policy and/or practice of requiring that Plaintiff and class members carry a company-issued radio and to respond to requests from management at all times.  Defendants' management contacted Plaintiff and class members on their radios during unpaid meal periods to instruct them to complete tasks.  For example, Plaintiff received requests from Defendants' management on her company-issued radio and would have her meal periods cut short to work off-the-clock for 15-20 minutes. Defendants knew or should have known that Plaintiff and class members were being made to respond to management and complete tasks while off-the-clock in order to meet Defendants' expectations, but failed to compensate them for this off-the-clock work.

65.    Third, upon information and belief, because Defendants frowned upon employees accruing meal period penalties, Defendants pressured Plaintiff and class members to clock out for meal periods and/or adjusted employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period, in order to strictly limit meal penalties that Defendants

would otherwise owe.  For example, Defendants' management instructed Plaintiff and class members to clock out and record compliant meal periods even when they were interrupted and tasked with performing work during their unpaid meal periods.

66.    Fourth, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory health screenings and temperature checks before their scheduled shifts. Plaintiff and class members followed Defendants' instructions and completed the required health screenings before clocking in for their shifts.  Even though Defendants required these health screenings, Defendants did not provide Plaintiff and class members a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.  Plaintiff and class members waited in line, for approximately three (3) minutes or more, to undergo the mandatory health screenings before Defendants permitted them to clock in for their shifts, but Defendants did not compensate them for the time they remained under Defendants' control.

67.    Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock during meal periods and/or before their shifts, and were suffered or permitted to perform work for which they were not paid.  Because Plaintiff and class members worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.

68.    Furthermore, Defendants did not pay Plaintiff and class members the correct overtime rate for the recorded overtime hours that they generated.  In addition to an hourly wage, Defendants paid Plaintiff and class members incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of

compensation.  However, in violation of the California Labor Code, Defendants failed to incorporate all compensation, including but not limited to, incentive pay and nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate.  Therefore, during times when Plaintiff and class members worked overtime and received these other forms of pay, Defendants failed to pay all overtime wages by paying a lower overtime rate than required.

69.    For example, Defendants paid Plaintiff and class members incentive pay and/or nondiscretionary bonuses, which were listed on Plaintiff's and class members' wage statements as "Pandemic Incentive."  During pay periods that Plaintiff and class members were paid overtime wages, Defendants failed to incorporate the incentive pay and/or nondiscretionary bonuses into Plaintiff's and class members' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked.  Specifically, Defendants paid Plaintiff and class members 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay.  Defendants' failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Plaintiff and class members on a company-wide basis.

70.    Defendants' failure to pay Plaintiff and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid Minimum Wages**

**(Against all Defendants)**

71.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

72.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in IWC Wage Order No. 1-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

73.    First, as stated, due to Defendants' practice of understaffing, assignment of heavy workloads, failure to adhere to a schedule of meal periods, and subsequent lack of meal period coverage, Plaintiff and class members were impeded from taking all uninterrupted meal periods to which they were entitled and were required to work off-the-clock.  Furthermore, as set forth above, Defendants required Plaintiff and class members to perform work off-the-clock, responding to and completing requests from management delivered in-person or over company-issued radios, but did not compensate them for this time.  Moreover, as stated, in order to prevent employees from accruing meal period penalties, upon information and belief, Defendants' management pressured employees to clock out for meal periods and/or adjusted employee time records to reflect compliant meal periods, but required them to continue working, time for which they were not paid.

///

74. Second, as set forth above, Defendants have implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory health screenings and temperature checks before their scheduled shifts, but did not compensate them for the time spent waiting and undergoing these health screenings and temperature checks.

75. Third, Defendants maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time to undergo mandatory drug testing and physical examinations. At all times, Defendants were in control of scheduling the date and time for the testing and physical examinations, selecting the provider or facility where the testing and physical examinations were to take place, and determining the scope of the testing and physical examinations. For example, Defendants gave Plaintiff strict instructions to obtain drug testing, and Plaintiff underwent the testing for the sole benefit of Defendants. Plaintiff followed Defendants' instructions, traveled approximately 40 miles (for approximately 45 minutes total) to and from the medical facility designated by Defendants in Salinas, California, and spent an additional 40 minutes waiting at the medical facility and undergoing the requisite testing. However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

76. Thus, Defendants did not pay minimum wages for all hours worked by Plaintiff and class members. To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

77. Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiff and class

1   members are entitled to recover liquidated damages in an amount equal to the

2   wages unlawfully unpaid and interest thereon.

### THIRD CAUSE OF ACTION

### Violations of California Labor Code, §§ 226.7, 512(a), 516, and 1198—Meal Period Violations

### (Against all Defendants)

78.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

79.   At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).

80.   At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), 516, and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

81.   At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

82.   As stated, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing while assigning heavy workloads, and

failing to adhere to a schedule of meal periods, which prevented Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled.  As a result, Plaintiff and class members had to work through part or all of their meal periods, have their meal periods interrupted, and wait extended periods of time before taking meal periods.  Additionally, as stated, Defendants had, and continue to have, a policy and/or practice of requiring that Plaintiff and class members carry a company-issued radio to respond to requests from management at all times, including during meal periods.  For example, as stated, Defendants' management would contact Plaintiff on her company-issued radio during meal periods and require her to complete work-related requests, forcing her to cut her meal periods short to comply with these requests.

83.   Moreover, as stated, because Defendants frowned upon employees accruing meal period penalties, Defendants' management pressured employees to clock out for meal periods and/or would adjust Plaintiff's and class members' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period, in order to strictly limit meal penalties that would need to be paid by Defendants.

84.   Defendants' practices and polices prevented Plaintiff and class members from taking all compliant meal periods to which they were entitled.  As a result, Plaintiff and class members were forced to work in excess of five (5) hours before taking a meal period and, at times, had their meal periods interrupted and/or had to forgo their meal periods altogether.   For example, as stated, Defendants' management interrupted Plaintiff in-person and via her company-issued radio to instruct her to work through part of her meal periods.  Additionally, Plaintiff would not be able to take meal periods until after her fifth hour of work or later due to the heavy workloads Defendants assigned to her.

///

///

85.   In addition, during the relevant time period, Defendants did not provide Plaintiff and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  For example, Plaintiff worked shifts in excess of ten (10) hours per day, but was not provided second meal periods during these shifts.  Plaintiff and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

86.   At all times herein mentioned, Defendants knew or should have known that, as a result of these policies, Plaintiff and class members were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods.  Defendants further knew or should have known that Defendants did not pay Plaintiff and class members all meal period premiums when meal periods were late, missed, shortened, or interrupted.

87.   Furthermore, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided.  Because of this practice and/or policy, Plaintiff and class members have not received all premium pay for missed, late, and interrupted meal periods.  Alternatively, to the extent that Defendants did pay Plaintiff and class members premium pay for missed, late, and interrupted meal periods, Defendants did not pay Plaintiff and class members at the correct rate of pay for premiums because Defendants systematically failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of compensation, in the regular rate of pay.  As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

///

///

88.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**

**(Against all Defendants)**

89.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

90.    At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiff's and class members' employment by Defendants.

91.    At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

92.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus v. ABM Security*

*Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized and permitted.

93.    During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, Defendants' company-wide practices, including understaffing and assigning heavy workloads, prevented Plaintiff and class members from being relieved of all duty to take rest periods.  Additionally, Defendants failed to adhere to a schedule of rest periods, which, coupled with Defendants' failure to provide adequate rest period coverage, further led to Plaintiff and class members not being authorized and permitted to take compliant rest periods.

94.    Moreover, as stated, Defendants had, and continue to have, a policy and/or practice of requiring that Plaintiff and class members carry a company-issued radio to respond to requests from management at all times, including during rest periods.  For example, Plaintiff had her rest periods cut short and interrupted to respond to requests from Defendants' management on her company-issued radio.

95.    Furthermore, upon information and belief, Defendants maintained and implemented a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on Defendants' premises during their rest periods.  Because Plaintiff and class members were restricted from leaving Defendants' premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as taking a brief walk outside of the facility.  Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.

96.    As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.    For example, Plaintiff received requests from management on her company-issued radio during her rest periods and was instructed to cut her rest periods short to comply with these requests.    Additionally, Plaintiff would miss her rest periods altogether due to a lack of rest period coverage.    Other class members similarly were not authorized and permitted to take all uninterrupted 10-minute rest periods to which they were entitled for the same reasons.    Furthermore, Defendants did not authorize and permit Plaintiff to take third rest periods when she worked shifts in excess of 10 hours.

97.    Defendants have also engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted.    Alternatively, to the extent that Defendants did pay Plaintiff and class members one (1) additional hour of premium pay for missed rest periods, Defendants did not pay Plaintiff and class members at the correct rate of pay for premiums because Defendants failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of compensation, in the regular rate of pay.    As a result, Defendants denied Plaintiff and class members rest periods and failed to pay them all rest period premiums due, in violation of Labor Code sections 226.7, 516, and the applicable IWC Wage Order.

98.    Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198.    Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period was not authorized and permitted.

///

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

99.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

100.  At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

101.  At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements.  For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, meal and rest period premiums, and/or paid sick leave, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

102.  Because Defendants did not record the time Plaintiff and Subclass members spent working off-the-clock and deducted time from their records for meal periods that were missed and/or interrupted (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason,

1    Defendants failed to accurately list the total number of hours worked by Plaintiff

2    and Subclass members, in violation of section 226(a)(2), and failed to list the

3    applicable hourly rates of pay in effect during the pay period and the corresponding

4    accurate number of hours worked at each hourly rate, in violation of section

5    226(a)(9).

6    103.  Additionally, because Defendants did not calculate Plaintiff's and

7    Subclass members' regular rate of pay correctly for purposes of paying overtime

8    wages, meal and rest period premiums, and/or paid sick leave, Defendants did not

9    list the correct amount of gross wages earned by Plaintiff and Subclass members

10   in compliance with section 226(a)(1).  For the same reason, Defendants failed to

11   list the correct amount of net wages earned by Plaintiff and Subclass members in

12   violation of section 226(a)(5).  Defendants also failed to correctly list all

13   applicable hourly rates in effect during the pay period, namely, correct rates of pay

14   for overtime wages, meal and rest period premiums, and/or paid sick leave, in

15   violation of section 226(a)(9).

16   104.  The wage statement deficiencies also include, among other things,

17   failing to list the number of piece-rate units earned and any applicable piece rate

18   if the employee is paid on a piece-rate basis; failing to list all deductions; failing

19   to list the name of the employee and only the last four digits of his or her social

20   security number or an employee identification number other than a social security

21   number; failing to list the name and address of the legal entity that is the employer;

22   failing to list the inclusive dates of the period for which employees were paid;

23   and/or failing to state all hours worked as a result of not recording or stating the

24   hours they worked off-the-clock.

25   105.  California Labor Code section 1198 provides that the maximum hours

26   of work and the standard conditions of labor shall be those fixed by the Labor

27   Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198

28   further provides that "[t]he employment of any employees for longer hours than

those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Plaintiff and Subclass members, in violation of section 1198. As stated, Defendants engaged in a company-wide practice and/or policy of falsifying Plaintiff's and Subclass members' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Plaintiff and Subclass members. Furthermore, in light of Defendants' failure to provide Plaintiff and Subclass with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

106. California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ." At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

107. Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not

exceeding four thousand dollars ($4,000) per employee.

## SIXTH CAUSE OF ACTION

## Violation of California Labor Code § 204—Failure to Timely Pay Wages During Employment

## (Against all Defendants)

108.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

109.  This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums that were not timely paid to Plaintiff and class members.

110.  At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

111.  At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

112.  At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

113.   During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, within the time periods specified by California Labor Code section 204.

114.   Defendants' failure to pay Plaintiff and class members all wages due violates Labor Code section 204.   Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

## SEVENTH CAUSE OF ACTION

**Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

**(Against all Defendants)**

115.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

116.   At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 1-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

117.   First, during the relevant time period, as stated, Defendants had a company-wide policy of requiring Plaintiff and class members to travel in their

own personal vehicles or alternate transportation to obtain mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  Defendants maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations.  At all times, Defendants were in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, as stated, Defendants gave Plaintiff strict instructions to obtain drug testing, and Plaintiff underwent the testing for the sole benefit of Defendants.   Plaintiff followed Defendants' instructions and traveled approximately 40 miles using her personal vehicle to and from the medical facility designated by Defendants in Salinas, California.  Although Defendants required Plaintiff and class members to use their own vehicles or obtain alternate transportation to undergo drug testing and/or physical examinations, Defendants never reimbursed them for their travel expenses.

118.   Second, during the relevant time period, Defendants had a company-wide policy of requiring Plaintiff and class members to utilize their own personal mobile phones and personal mobile data to carry out their job duties, but failed to reimburse them for the costs of their work-related mobile phone expenses.  Plaintiff and class members were required to use their personal mobile phones to complete their work-related tasks, such as sending pictures to Defendants' management to verify that they had adequately cleaned and sanitized workstations.  For example, Defendants' management required Plaintiff to send approximately 10 pictures to her supervisor each day using her personal mobile phone, so that Defendants could track her daily performance.  Although Defendants required Plaintiff and class members to utilize their personal mobile phones and mobile

data to carry out their work-related responsibilities, Defendants failed to reimburse them for this cost.

119. Third, during the relevant time period, Defendants, on a company-wide basis, required Plaintiff and class members to purchase protective wear and/or equipment were necessary for the completion of their work-related duties. For example, Plaintiff was required to spend $80.00 to purchase her own pair of protective pants to be worn while sanitizing machinery and workstations, because Defendants did not provide employees with a sufficient number of these pants. Thus, Defendants failed to provide protective wear and/or equipment to Plaintiff and class members, forcing them to procure their own, and failed to reimburse Plaintiff and class members for these costs.

120. Defendants could have provided Plaintiff and class members with the actual tools for use on the job, such as company vehicles, company phones, and protective wear and/or equipment. Or, Defendants could have reimbursed employees for the costs of their mileage, travel expenses, mobile phone usage, and protective wear and/or equipment. Instead, Defendants passed these operating costs off onto Plaintiff and class members. At all relevant times, Plaintiff did not earn at least two (2) times the minimum wage.

121. Defendants' company-wide policy and/or practice of passing on their operating costs to Plaintiff and class members violates California Labor Code section 2802. Defendants have intentionally and willfully failed to reimburse Plaintiff and other class members for necessary business-related expenses and costs.

122. Plaintiff and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

///

///

**EIGHTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698,** *et seq.*

**(Against all Defendants)**

123.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

124.   California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.   Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802.   Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 246, 516, 1182.12, and 2810.5.

125.   Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

        (a)    Violation of Labor Code sections 510 and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay, as alleged herein;

        (b)    Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

        (c)    Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods, as alleged herein;

(d)     Violation of Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods, as alleged herein;

(e)     Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees, as alleged herein;

(f)     Violation of Labor Code sections 1174(d) and 1198, and the applicable IWC Wage Order for failure to maintain payroll records, as alleged herein;

(g)     Violation of Labor Code sections 201, 202, and 203 for failure to pay all earned wages upon termination, as set forth below;

(h)     Violation of Labor Code section 204 for failure to pay all earned wages during employment, as alleged herein;

(i)     Violation of Labor Code section 222.5 for failing to compensate other aggrieved employees for mandatory physical examinations and/or drug testing, as set forth below;

(j)     Violation of Labor Code section 246 for failure to properly calculate the sick leave paid to other aggrieved employees, as set forth below;

(k)     Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred, as alleged herein; and

(l)     Violation of Labor Code section 2810.5(a)(1)(A)-(C) for failure to provide written notice of information material to Plaintiff's and other aggrieved employees' employment with Defendants, as set forth below.

FIRST AMENDED CLASS ACTION COMPLAINT

126.   At all relevant times herein, California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

127.   Defendants willfully failed to pay other aggrieved employees who are no longer employed by Defendants all their earned wages, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.   Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 256 and/or 2699(a), (f), and (g).

128.   At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

129.   During the relevant time period, Defendants implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo a mandatory physical examination and/or drug testing but required them to do so at their own expense.   Upon information and belief, Defendants had a company-wide policy requiring that all employees travel to a specified medical facility using their own personal vehicles to undergo physical examinations, and/or drug testing.   At all times, Defendants were in control of scheduling the date and time for the examinations and/or testing, selecting the provider/facility where the examinations and/or testing were to take place, and determining the scope of the examinations and/or testing.

130.   However, Defendants did not compensate other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities.  Defendants' policy and/or practice of not paying for all costs other aggrieved employees incurred obtaining mandatory physical examinations and/or drug testing is in violation of California Labor Code section 222.5.  Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

131.   At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked.  Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment.  Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

132.   During the relevant time period, Defendants did not pay other aggrieved employees the correct sick leave rates of pay.  As stated, in addition to an hourly wage, Defendants paid other aggrieved employees incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of

remuneration. However, in violation of the California Labor Code, Defendants failed to incorporate all remunerations, including incentive pay, nondiscretionary bonuses, and/or shift differential pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate. Therefore, during times when other aggrieved employees took sick leave and received these other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, Defendants paid other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

133. Defendants' failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to other aggrieved employees on a company-wide basis, in violation of California Labor Code 246(l). Other aggrieved employees are entitled to recover civil penalties pursuant to Labor Code sections 248.5 and/or 2699(a), (f), and (g).

134. At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances. Labor Code § 2810.5(a)(1)(A)-(C).

135. At all relevant times, on information and belief, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and other aggrieved employees that lists the requisite information set forth in Labor Code section

2810.5(a)(1)(A)-(C).  Defendants' failure to provide Plaintiff and other aggrieved employees with written notice of basic information regarding their employment with Defendants is in violation of Labor Code section 2810.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

**NINTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unlawful Business Practices**

**(Against all Defendants)**

136.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

137.  Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

138.  Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

139.  Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq*.

140.  A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a)    Requiring non-exempt, hourly paid employees, including Plaintiff and class members, to work overtime without paying

them proper compensation in violation of California Labor Code sections 510 and 1198 and the applicable IWC Wage Order, and paying Plaintiff and class members overtime at a lower rate than required by law by failing to properly calculate the regular rate of pay for purposes of overtime, as alleged herein;

(b)    Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Wage Order, as alleged herein;

(c)    Failing to provide uninterrupted meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(d)    Failing to authorize and permit Plaintiff and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(e)    Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the applicable IWC Wage Order, as alleged herein;

(f)    Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204, as alleged herein;

(g)    Failing to pay Plaintiff and class members the costs of mandatory physical examinations and/or drug testing in

violation of California Labor Code section 222.5, as set forth below;

(h)   Failing to properly calculate the sick leave paid to Plaintiff and class members in violation of Labor Code section 246(l), as set forth below;

(i)   Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein; and

(j)   Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

141.   At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any medical or physical examination taken.

142.   At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo a mandatory physical examination and/or drug test, but required them to do so at their own expense.  As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and class members, travel to a specified medical facility using their own personal vehicles or alternate transportation to undergo physical examinations and/or drug testing.  At all times, Defendants were in control of scheduling the date and time for the examination and/or testing, selecting the provider/facility where the examination and/or testing was to take place, and determining the scope of the examination and/or testing.

143.   During the relevant time period, as stated, Plaintiff was instructed by Defendants to travel to a medical facility in Salinas, California, and obtain a drug test.   Plaintiff followed Defendants' instructions, traveled to the facility

Defendants selected, and underwent the testing. Plaintiff was required to travel approximately 40 miles (for approximately 45 minutes total) to and from a medical facility selected by Defendants using her own vehicle, and spent an additional 40 minutes waiting at the medical facility and undergoing the requisite testing.

144. However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities. Defendants' policy and/or practice of not paying for all costs Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug testing is in violation of California Labor Code section 222.5.

145. At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

///

146. During the relevant time period, Defendants did not pay Plaintiff and class members the correct sick leave rates of pay. In addition to an hourly wage, Defendants paid Plaintiff and class members incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration. However, in violation of the California Labor Code, Defendants failed to incorporate all remunerations, including incentive pay, nondiscretionary bonuses, and/or shift differential pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate. Therefore, during times when Plaintiff and class members took sick leave and received these other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, Defendants paid Plaintiff and class members sick leave based on their hourly rate of pay instead of their regular rate of pay.

147. For example, during the pay period ending February 1, 2020, Plaintiff took 16.00 hours of sick leave and earned $72.00 in shift differential pay during the same pay period. However, Defendants paid Plaintiff's sick leave rate based on her hourly rate of $15.7500, instead of her regular rate of pay. Defendants' failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to Plaintiff and class members on a company-wide basis in violation of Labor Code 246(l).

148. At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

149.  At all relevant times, on information and belief, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and class members that lists the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).  Defendants' failure to provide Plaintiff and class members with written notice of basic information regarding their employment with Defendants is in violation of Labor Code section 2810.5.

150.  As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

151.  Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**TENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq*. –**

**Unfair Business Practices**

**(Against all Defendants)**

152.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

153.  Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships,

1    joint stock companies, and/or associations.

2        154.   Defendants' conduct, as alleged herein, has been, and continues to be,

3    unfair, and harmful to Plaintiff, class members, and to the general public.  Plaintiff

4    has suffered injury in fact and has lost money as a result of Defendants' unfair

5    business practices.  Plaintiff seeks to enforce important rights affecting the public

6    interest within the meaning of Code of Civil Procedure section 1021.5.

7        155.   Defendants' activities, namely Defendants' company-wide practice

8    and/or policy of not paying Plaintiff and class members all meal and rest period

9    premiums due to them under Labor Code section 226.7, deprived Plaintiff and

10   class members of the compensation guarantee and enhanced enforcement

11   implemented by section 226.7.  The statutory remedy provided by section 226.7 is

12   a "'dual-purpose' remedy intended primarily to compensate employees, and

13   secondarily to shape employer conduct."  *Safeway, Inc. v. Superior Court*, 238

14   Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were

15   guaranteed to Plaintiff and class members as part of their employment with

16   Defendants, and thus Defendants' practice and/or policy of denying these statutory

17   benefits constitutes an unfair business practice in violation of California Business

18   & Professions Code sections 17200, *et seq.*  (*Id.*)

19       156.   A violation of California Business & Professions Code sections

20   17200, *et seq.* may be predicated on any unfair business practice.  In the instant

21   case, Defendants' policies and practices have violated the spirit of California's

22   meal and rest period laws and constitute acts against the public policy behind these

23   laws.

24       157.   Pursuant to California Business & Professions Code sections 17200,

25   *et seq.*, Plaintiff and class members are entitled to restitution for the class-wide

26   loss of the statutory benefits implemented by section 226.7 withheld and retained

27   by Defendants during a period that commences four years prior to the filing of this

28   complaint; a permanent injunction requiring Defendants to pay all statutory

1  benefits implemented by section 226.7 due to Plaintiff and class members; an

2  award of attorneys' fees pursuant to California Code of Civil Procedure section

3  1021.5 and other applicable laws; and an award of costs.

4  **REQUEST FOR JURY TRIAL**

5  Plaintiff requests a trial by jury.

6  **PRAYER FOR RELIEF**

7  Plaintiff, on behalf of all others similarly situated, prays for relief and

8  judgment against Defendants, jointly and severally, as follows:

9  1.  For damages, unpaid wages, penalties, injunctive relief, and

10  attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of

11  interest and costs.  Plaintiff reserves the right to amend her prayer for relief to seek

12  a different amount.

13  ///

14  **Class Certification**

15  2.  That this case be certified as a class action;

16  3.  That Plaintiff be appointed as the representative of the Class and

17  Subclass;

18  4.  That counsel for Plaintiff be appointed as class counsel.

19  **As to the First Cause of Action**

20  5.  That the Court declare, adjudge, and decree that Defendants violated

21  California Labor Code sections 510 and 1198 and the applicable IWC Wage Order

22  by willfully failing to pay all overtime wages due to Plaintiff and class members;

23  6.  For general unpaid wages at overtime wage rates and such general

24  and special damages as may be appropriate;

25  7.  For prejudgment interest on any unpaid overtime compensation

26  commencing from the date such amounts were due, or as otherwise provided by

27  law;

28  ///

8.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Second Cause of Action

10.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiff and class members;

11.    For general unpaid wages and such general and special damages as may be appropriate;

12.    For prejudgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.    For liquidated damages pursuant to California Labor Code section 1194.2; and

15.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

16.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198 and the applicable IWC Wage Order by willfully failing to provide all meal periods to Plaintiff and class members;

17.    That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

///

18.    For all actual, consequential, and incidental losses and damages, according to proof;

19.    For premiums pursuant to California Labor Code section 226.7(c);

20.    For prejudgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

21.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Fourth Cause of Action

23.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order by willfully failing to authorize and permit Plaintiff and class members to take all rest periods;

24.    That the Court make an award to the Plaintiff and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25.    For all actual, consequential, and incidental losses and damages, according to proof;

26.    For premiums pursuant to California Labor Code section 226.7(c);

27.    For prejudgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

28.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

29.    For such other and further relief as the Court may deem equitable and appropriate.

///

///

**As to the Fifth Cause of Action**

30.    That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and applicable the IWC Wage Order as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

31.    For all actual, consequential, and incidental losses and damages, according to proof;

32.    For injunctive relief pursuant to California Labor Code section 226(h);

33.    For statutory penalties pursuant to California Labor Code section 226(e);

34.    For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

35.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Sixth Cause of Action**

36.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 204 by willfully failing to timely pay Plaintiff and class members overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums during their employment;

37.    For all actual, consequential and incidental losses and damages, according to proof;

38.    For statutory penalties according to proof pursuant to California Labor Code section 210;

39.    For prejudgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

40.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

41.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Seventh Cause of Action

42.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related expenses and costs incurred by Plaintiff and class members;

43.    For unpaid business-related expenses and such general and special damages as may be appropriate;

44.    For prejudgment interest on any unpaid business-related expenses from the date such amounts were due, or as otherwise provided by law;

45.    For all actual, consequential, and incidental losses and damages, according to proof;

46.    For attorneys' fees and costs pursuant to California Labor Code section 2802(c), or as otherwise provided by law; and

47.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Eighth Cause of Action

48.    That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and/or other aggrieved employees: 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512(a), 516, and 1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage statements and maintain accurate payroll records); 201, 202, and 203 (by failing to timely pay all earned wages upon termination); 204 (by failing to timely pay all earned wages during employment); 222.5 (by failing to pay the costs of mandatory physical

examinations and/or drug testing; 246 (by failing to properly calculate sick leave pay); 2802 (by failing to reimburse business expenses); and 2810.5 (by failing to provide written notice of information material to employment);

49.    For civil penalties pursuant to California Labor Code sections 210, 226.3, 248.5, 256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

50.    For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

51.    For pre-judgment and post-judgment interest as provided by law; and

52.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Ninth Cause of Action**

53.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all overtime wages due to them, failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members all meal periods, failing to authorize and permit Plaintiff and class members to take all rest periods, failing to provide Plaintiff and class members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiff and class members, failing to timely pay Plaintiff and class members all earned wages during employment, failing to reimburse Plaintiff and class members for the costs of mandatory drug testing and/or physical examinations, failing to properly calculate Plaintiff's and class members' sick leave, failing to reimburse Plaintiff and class members for business-related expenses, and failing to provide written notice of information

material to employment, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

54.    For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

55.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

56.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

57.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Tenth Cause of Action

58.    That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

59.    For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

60.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

61.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

62.    For pre-judgment and post-judgment interest as provided by law; and

///

63.    For such other and further relief as the Court may deem equitable and appropriate.

Dated: October 12, 2021                    Respectfully submitted,

Capstone Law APC


By: */s/ Bevin Allen Pike*

Bevin Allen Pike
Daniel Jonathan
Trisha K. Monesi

Attorneys for Plaintiff Gabriela Soto Hurtado

# EXHIBIT "1"



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

MAO SHIOKURA
310.712.8030 Direct
Mao.Shiokura@capstonelawyers.com

June 4, 2021

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/308)

Subject:        *Gabriela Soto Hurtado v. Sweet Earth, Inc.*

Dear PAGA Administrator:

This office represents Gabriela Soto Hurtado in connection with her claims under the California Labor Code.  Ms. Soto Hurtado was an employee of SWEET EARTH, INC. ("SWEET EARTH").

The employer may be contacted directly at the address below:

SWEET EARTH, INC.
3080 HILLTOP RD
MOSS LANDING CA 95039

Ms. Soto Hurtado intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Ms. Soto Hurtado seeks relief on behalf of herself, the State of California, and other persons who are or were employed by SWEET EARTH as a non-exempt, hourly paid employee in California and who received at least one wage statement ("aggrieved employees").  This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

SWEET EARTH employed Ms. Soto Hurtado as an hourly paid, non-exempt employee from approximately February 2019 to July 2020.  Ms. Soto Hurtado worked for SWEET EARTH as a Level II Sanitation/Dishwasher at its facility in Moss Landing, California.  During her employment, Ms. Soto Hurtado typically worked 11-12 hours per day, and five (5) to six (6) days per week.  At the time Ms. Soto Hurtado's employment with SWEET EARTH ended, she earned approximately $16.20 per hour.  Her job duties included, without limitation, cleaning and sanitizing machines and keeping track of chemical inventory.

SWEET EARTH committed one or more of the following Labor Code violations against Ms. Soto Hurtado, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

## SWEET EARTH's Company-Wide and Uniform Payroll and HR Practices

SWEET EARTH, INC. is a Delaware corporation, and a producer of plant-based frozen foods that are sold in grocery stores throughout the United States. Upon information and belief, SWEET EARTH maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Moss Landing, California, for all non-exempt, hourly paid employees working for SWEET EARTH in California, including Ms. Soto Hurtado and other aggrieved employees. At all relevant times, SWEET EARTH issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Soto Hurtado and other aggrieved employees, regardless of their location or position.

Upon information and belief, SWEET EARTH maintains a centralized Payroll department at its corporate headquarters in Moss Landing, California, which processes payroll for all non-exempt, hourly paid employees working for SWEET EARTH in California, including Ms. Soto Hurtado and other aggrieved employees. Further, SWEET EARTH issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Soto Hurtado and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended. In other words, SWEET EARTH utilized the same methods and formulas when calculating wages due to Ms. Soto Hurtado and other aggrieved employees in California.

## Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

SWEET EARTH willfully failed to pay all overtime wages owed to Ms. Soto Hurtado and other aggrieved employees. During the relevant time period, Ms. Soto Hurtado and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8)

---

[1] These facts, theories, and claims are based on Ms. Soto Hurtado's experience and counsel's review of those records currently available relating to Ms. Soto Hurtado's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Soto Hurtado reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, SWEET EARTH had, and continues to have, a company-wide policy and/or practice of understaffing its facilities while assigning heavy workloads, which led to a failure to provide Ms. Soto Hurtado and other aggrieved employees with adequate meal period coverage, because there were too few employees on duty to handle the workload.  As a result of this inadequate meal period coverage, Ms. Soto Hurtado and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period.  For example, once per week, SWEET EARTH's management would interrupt Ms. Soto Hurtado's meal periods in-person and instruct her to spend 15-20 minutes of her meal period sanitizing food processing machinery.  Furthermore, SWEET EARTH had a practice of failing to adhere to a schedule of meal periods, which further caused Ms. Soto Hurtado and other aggrieved employees to not be relieved of their duties and led them to perform work during unpaid meal periods.

Second, SWEET EARTH had, and continues to have, a policy and/or practice of requiring that Ms. Soto Hurtado and other aggrieved employees carry a company-issued radio and to respond to requests from management at all times.  SWEET EARTH's management contacted Ms. Soto Hurtado and other aggrieved employees on their radios during unpaid meal periods to instruct them to complete tasks.  For example, three (3) times per week, Ms. Soto Hurtado received requests from SWEET EARTH's management on her company-issued radio and would have her meal periods cut short to work off-the-clock for 15-20 minutes.  SWEET EARTH knew or should have known that Ms. Soto Hurtado and other aggrieved employees were being made to respond to management and complete tasks while off-the-clock in order to meet SWEET EARTH's expectations, but failed to compensate them for this off-the-clock work.

Third, upon information and belief, because SWEET EARTH frowned upon employees accruing meal period penalties, SWEET EARTH pressured Ms. Soto Hurtado and other aggrieved employees to clock out for meal periods and/or adjusted employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period, in order to strictly limit meal penalties that SWEET EARTH would otherwise owe.  For example, SWEET EARTH's management instructed Ms. Soto Hurtado and other aggrieved employees to clock out and record compliant meal periods even when they were interrupted and tasked with performing work during their unpaid meal periods.

Fourth, SWEET EARTH implemented, on a company-wide basis, an employer-imposed requirement that Ms. Soto Hurtado and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts.  Ms. Soto Hurtado and other aggrieved employees followed SWEET EARTH's instructions and completed the required health screenings before clocking in for their shifts.  Even though SWEET EARTH required these health screenings, SWEET EARTH did not provide Ms. Soto Hurtado and other aggrieved employees a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.  Ms. Soto Hurtado and other aggrieved employees waited in line, for approximately three (3) minutes or more, to undergo the mandatory health screenings before SWEET EARTH permitted them to clock in for their shifts, but SWEET EARTH did not compensate them for the time they remained under SWEET EARTH's control.

SWEET EARTH knew or should have known that as a result of these company-wide practices and/or policies, Ms. Soto Hurtado and other aggrieved employees were working off-the-clock during their

meal periods and/or before their shifts, and were suffered or permitted to perform work for which they were not paid. Because Ms. Soto Hurtado and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.

Furthermore, SWEET EARTH did not pay Ms. Soto Hurtado and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, SWEET EARTH paid Ms. Soto Hurtado and other aggrieved employees incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration. However, in violation of the California Labor Code, SWEET EARTH failed to incorporate all compensation, including incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Ms. Soto Hurtado and other aggrieved employees worked overtime and received these other forms of pay, SWEET EARTH failed to pay all overtime wages by paying a lower overtime rate than required.

For example, SWEET EARTH paid Ms. Soto Hurtado and other aggrieved employees incentive pay and/or nondiscretionary bonuses, which were listed on Ms. Soto Hurtado's and other aggrieved employees' wage statements as "Pandemic Incentive." During pay periods that Ms. Soto Hurtado and other aggrieved employees were paid overtime wages, SWEET EARTH failed to incorporate the incentive pay and/or nondiscretionary bonuses into Ms. Soto Hurtado's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked. Specifically, SWEET EARTH paid Ms. Soto Hurtado and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay. SWEET EARTH's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Ms. Soto Hurtado and other aggrieved employees on a company-wide basis.

Therefore, Ms. Soto Hurtado and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked, in violation of California Labor Code sections 510 and 1198. Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in IWC Wage Order No. 1-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

As stated, due to SWEET EARTH's practices of understaffing, assignment of heavy workloads, failure to adhere to a schedule of meal periods, and subsequent lack of meal period coverage, Ms. Soto Hurtado and other aggrieved employees were impeded from taking all uninterrupted meal periods to which they were entitled and were required to work off-the-clock. Furthermore, as set forth above, SWEET EARTH required Ms. Soto Hurtado and other aggrieved employees to perform

work off-the-clock, responding to and completing requests from management delivered in-person or over company-issued radios, but did not compensate them for this time.  Moreover, as stated, in order to prevent employees from accruing meal period penalties, upon information and belief, SWEET EARTH's management pressured employees to clock out for meal periods and/or adjusted employee time records to reflect compliant meal periods, but required them to continue working, time for which they were not paid.  Furthermore, as set forth above, SWEET EARTH has implemented, on a company-wide basis, an employer-imposed requirement that Ms. Soto Hurtado and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts, but did not compensate them for the time spent waiting for and undergoing these health screenings and temperature checks.

Additionally, SWEET EARTH maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time to undergo mandatory drug testing and/or physical examinations.  At all times, SWEET EARTH was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  SWEET EARTH gave other aggrieved employees strict instructions to undergo drug testing and/or physical examinations, and other aggrieved employees underwent the testing and/or examinations for the sole benefit of SWEET EARTH.  Other aggrieved employees were required to travel in their own personal vehicles or obtain alternate transportation and spend time undergoing SWEET EARTH's mandatory drug tests and/or physical examinations.  However, SWEET EARTH did not compensate other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

Thus, SWEET EARTH did not pay minimum wages for all hours worked by Ms. Soto Hurtado and other aggrieved employees.  Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, SWEET EARTH did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1.

Accordingly, SWEET EARTH regularly failed to pay at least minimum wages to Ms. Soto Hurtado and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1 and 1198.  Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

## Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53

Cal. 4th 1004, 1041-1042 (2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As set forth above, during the relevant time period, SWEET EARTH had, and continues to have, a company-wide policy and/or practice of understaffing while assigning heavy workloads, and failing to adhere to a schedule of meal periods, which prevented Ms. Soto Hurtado and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. As a result, Ms. Soto Hurtado and other aggrieved employees had to work through part or all of their meal periods, have their meal periods interrupted, and wait extended periods of time before taking meal periods. Additionally, as stated, SWEET EARTH had, and continues to have, a policy and/or practice of requiring that Ms. Soto Hurtado and other aggrieved employees carry a company-issued radio to respond to requests from management at all times, including during meal periods. For example, as stated, SWEET EARTH's management would contact Ms. Soto Hurtado on her company-issued radio during meal periods and require her to complete work-related requests, forcing her to cut her meal periods short to comply with these requests.

Moreover, as stated, because SWEET EARTH frowned upon employees accruing meal period penalties, SWEET EARTH's management pressured employees to clock out for meal periods and/or would adjust Ms. Soto Hurtado's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period, in order to strictly limit meal penalties that would need to be paid by SWEET EARTH.

SWEET EARTH's practices and polices prevented Ms. Soto Hurtado and other aggrieved employees from taking all compliant meal periods to which they were entitled. As a result, Ms. Soto Hurtado and other aggrieved employees would be forced to work in excess of five (5) hours before taking a meal period and, at times, had their meal periods interrupted and/or had to forgo their meal periods altogether. For example, as stated, SWEET EARTH's management interrupted Ms. Soto Hurtado in-person and via her company-issued radio four (4) times per week to instruct her to work through part of her meal periods. Additionally, three (3) times per week, Ms. Soto Hurtado would not be able to take meal periods until after her fifth hour of work or later due to the heavy workloads SWEET EARTH assigned to her.

In addition, during the relevant time period, Ms. Soto Hurtado and other aggrieved employees worked shifts in excess of ten (10) hours without receiving an uninterrupted second 30-minute meal period. For example, Ms. Soto Hurtado would work shifts in excess of ten (10) hours without receiving an uninterrupted second 30-minute meal period. Ms. Soto Hurtado and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

SWEET EARTH knew or should have known that as a result of its policies and practices, that Ms. Soto Hurtado and other aggrieved employees were not actually relieved of all duties to take timely, uninterrupted meal periods. SWEET EARTH further knew or should have known that it did not pay Ms. Soto Hurtado and other aggrieved employees meal period premiums when meal periods were missed, late, short, and/or interrupted.

Furthermore, SWEET EARTH engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided.  Because of this practice and/or policy, Ms. Soto Hurtado and other aggrieved employees have not received premium pay for missed, interrupted, or late meal periods.  Alternatively, to the extent that SWEET EARTH did pay Ms. Soto Hurtado and other aggrieved employees premium pay for missed, late, and interrupted meal periods, SWEET EARTH did not pay Ms. Soto Hurtado and other aggrieved employees at the correct rate of pay for premiums because SWEET EARTH systematically failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, SWEET EARTH failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198.  Ms. Soto Hurtado and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### <u>Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods</u>

California Labor Code sections 226.7, 516, 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc*., 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, SWEET EARTH regularly failed to authorize and permit Ms. Soto Hurtado and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, SWEET EARTH's company-wide practices, including understaffing and assigning heavy workloads, prevented Ms. Soto Hurtado and other aggrieved employees from being relieved of all duty in order to take compliant rest periods.  SWEET EARTH also failed to adhere to a schedule of rest periods, which, coupled with SWEET EARTH's failure to provide adequate rest period coverage, further led to Ms. Soto Hurtado and other aggrieved employees not being authorized and permitted to take rest periods.  Moreover, as stated, SWEET EARTH had, and continues to have, a policy and/or practice of requiring that Ms. Soto Hurtado and other aggrieved employees carry a company-issued radio to respond to requests from management at all times, including during rest periods.  For example, Ms. Soto Hurtado had her rest periods cut short and interrupted to respond to requests from SWEET EARTH's management on her company-issued radio.

Furthermore, upon information and belief, SWEET EARTH maintained and implemented a company-wide on-premises rest period policy, which mandated that Ms. Soto Hurtado and other aggrieved employees remain on the work premises during their rest periods.  Because Ms. Soto Hurtado and other aggrieved employees were restricted from leaving SWEET EARTH's premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as taking a brief walk outside of the facility.  Thus, SWEET EARTH effectively maintained control over Ms. Soto Hurtado and other aggrieved employees during rest periods.

As a result, Ms. Soto Hurtado and other aggrieved employees would work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without being permitted and authorized to take all ten (10) minute rest periods to which they were entitled.  For example, four (4) times per week, Ms. Soto Hurtado received requests from management on her company-issued radio during her rest periods and was instructed to cut her rest periods short to comply with these requests.  Additionally, twice per month, Ms. Soto Hurtado would miss her rest periods altogether due to a lack of rest period coverage.  Other aggrieved employees similarly were not authorized and permitted to take all uninterrupted 10-minute rest periods to which they were entitled for the same reasons.  Furthermore, SWEET EARTH did not authorize and permit Ms. Soto Hurtado to take third rest periods when she worked shifts in excess of 10 hours.

SWEET EARTH also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted.  Alternatively, to the extent that SWEET EARTH did pay Ms. Soto Hurtado and other aggrieved employees one (1) additional hour of premium pay for missed rest periods, SWEET EARTH did not pay Ms. Soto Hurtado and other aggrieved employees at the correct rate of pay for premiums because SWEET EARTH failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, SWEET EARTH failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198.  Ms. Soto Hurtado and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records.  SWEET EARTH has not provided Ms. Soto Hurtado and other aggrieved employees with properly itemized wage statements.  Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wage statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000.  Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, SWEET EARTH has knowingly and intentionally provided Ms. Soto Hurtado and other aggrieved employees with uniform, incomplete, and inaccurate wage

statements.  For example, SWEET EARTH issued uniform wage statements to Ms. Soto Hurtado and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate.  Specifically, SWEET EARTH violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

Because SWEET EARTH did not record the time Ms. Soto Hurtado and other aggrieved employees spent working off-the-clock and deducted time from their records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), SWEET EARTH did not list the correct amount of gross wages and net wages earned by Ms. Soto Hurtado and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, SWEET EARTH failed to accurately list the total number of hours worked by Ms. Soto Hurtado and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Additionally, because SWEET EARTH did not calculate Ms. Soto Hurtado's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and/or paid sick leave, SWEET EARTH did not list the correct amount of gross wages in compliance with section 226(a)(1).  For the same reason, SWEET EARTH also failed to list the correct amount of net wages in violation of section 226(a)(5).  SWEET EARTH also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct rates of pay for overtime and paid sick leave, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), SWEET EARTH willfully failed to maintain accurate payroll records for Ms. Soto Hurtado and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate

time records showing when the employee begins and ends each work period and meal period. During the relevant time period, SWEET EARTH failed, on a company-wide basis, to keep accurate records of work and meal period start and stop times for Ms. Soto Hurtado and other aggrieved employees, in violation of section 1198.  As stated, SWEET EARTH engaged in a company-wide practice and/or policy of falsifying Ms. Soto Hurtado's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Ms. Soto Hurtado and other aggrieved employees.  Furthermore, in light of SWEET EARTH's failure to provide Ms. Soto Hurtado and other aggrieved employees with second 30-minute meal periods to which they were entitled, SWEET EARTH kept no records of meal start and end times for second meal periods.

Because SWEET EARTH failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Soto Hurtado and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Ms. Soto Hurtado and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, SWEET EARTH failed to pay Ms. Soto Hurtado and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, within any time period specified by California Labor Code section 204.

Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

SWEET EARTH willfully failed to pay other aggrieved employees who are no longer employed by SWEET EARTH all their earned wages, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving SWEET EARTH's employ.

Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, SWEET EARTH implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory drug testing and/or physical examinations, but required them to do so at their own expense.  As stated, SWEET EARTH had a company-wide policy requiring that other aggrieved employees travel to a specified medical facility on their own time and use their own means of transportation to undergo drug testing and/or physical examinations.  At all times, SWEET EARTH was in control of scheduling the date and time for the testing and/or examinations, selecting the provider/facility where the testing and/or examinations were to take place, and determining the scope of the testing and/or examinations.

However, SWEET EARTH did not compensate other aggrieved employees for the time they spent traveling to and from the medical facilities, for the time they spent undergoing the drug testing and/or physical examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities.  SWEET EARTH's policy and/or practice of not paying for all costs other aggrieved employees incurred obtaining mandatory drug testing and/or physical examinations is in violation of California Labor Code section 222.5.

Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**Violation of California Labor Code § 246 – Unpaid Sick Leave**

At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours

or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

During the relevant time period, SWEET EARTH did not pay other aggrieved employees the correct sick leave rates of pay. As stated, in addition to an hourly wage, SWEET EARTH paid other aggrieved employees incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration. However, in violation of the California Labor Code, SWEET EARTH failed to incorporate all remunerations, including incentive pay, nondiscretionary bonuses, and/or shift differential pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate. Therefore, during times when other aggrieved employees took sick leave and received these other forms of pay, SWEET EARTH failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, SWEET EARTH paid other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

SWEET EARTH's failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to other aggrieved employees on a company-wide basis, in violation of California Labor Code 246(l). Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 1-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, as stated, SWEET EARTH had a company-wide policy of requiring other aggrieved employees to travel to medical facilities on their own time and using their personal vehicles to obtain mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage. At all times, SWEET EARTH was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. SWEET EARTH gave other aggrieved employees strict instructions to obtain drug testing and/or physical examinations, and other aggrieved employees underwent the testing and/or physical examinations for the sole benefit of SWEET EARTH. Although SWEET EARTH required other aggrieved employees to use their own

vehicles or obtain alternate transportation to undergo drug testing and/or physical examinations, SWEET EARTH never reimbursed them for their travel expenses.

Second, during the relevant time period, SWEET EARTH, on a company-wide basis, required that Ms. Soto Hurtado and other aggrieved employees use their own personal mobile phones and personal mobile data to carry out their job duties, but failed to reimburse them for the costs of their work-related mobile phone expenses. Ms. Soto Hurtado and other aggrieved employees were required to use their personal mobile phones to complete their work-related tasks, such as sending pictures to SWEET EARTH's management to verify that they had adequately cleaned and sanitized workstations. For example, SWEET EARTH's management required Ms. Soto Hurtado to send approximately 10 pictures to her supervisor each day using her personal mobile phone, so that SWEET EARTH could track her daily performance. Although SWEET EARTH required Ms. Soto Hurtado and other aggrieved employees to utilize their personal mobile phones to carry out their work-related responsibilities, SWEET EARTH failed to reimburse them for this cost.

Third, during the relevant time period, SWEET EARTH, on a company-wide basis, required Ms. Soto Hurtado and other aggrieved employees to purchase protective wear and/or equipment necessary for the completion of their work-related duties. For example, Ms. Soto Hurtado was required to spend $80.00 to purchase her own pair of protective pants to be worn while sanitizing machinery and workstations, because SWEET EARTH did not provide employees with a sufficient number of these pants. Thus, SWEET EARTH failed to provide protective wear and/or equipment to Ms. Soto Hurtado and other aggrieved employees, forcing them to procure their own, and failed to reimburse Ms. Soto Hurtado and other aggrieved employees for these costs.

SWEET EARTH could have provided Ms. Soto Hurtado and other aggrieved employees with the actual tools required for use on the job, including company vehicles, company phones, and protective wear and/or equipment. Or, SWEET EARTH could have reimbursed employees for their mileage, travel expenses, mobile phone usage, and protective wear and/or equipment costs. Instead, SWEET EARTH passed these operating costs off onto Ms. Soto Hurtado and other aggrieved employees. At all relevant times, Ms. Soto Hurtado and other aggrieved employees did not earn at least two (2) times the minimum wage.

Thus, SWEET EARTH had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code § 2810.5(a)(1)(A)-(C) – Failure to Provide Notice of Material Terms of Employment

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances. Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must

also include a statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

SWEET EARTH failed to provide Ms. Soto Hurtado and other aggrieved employees written notice that lists all of the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C). SWEET EARTH's failure to provide Ms. Soto Hurtado and other aggrieved employees with written notice of basic information regarding their employment with SWEET EARTH is in violation of Labor Code section 2810.5.

Ms. Soto Hurtado and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . .  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ."  Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." SWEET EARTH, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Soto Hurtado's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Soto Hurtado seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees.  Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Soto Hurtado, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against SWEET EARTH for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

Therefore, on behalf of all aggrieved employees, Ms. Soto Hurtado seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

14

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Mao Shiokura
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Mao Shiokura

Copy: SWEET EARTH, INC. (via U.S. Certified Mail)

PITNEY BOWES

$008.080
02 1P
0000666553  MAY 21 2021
MAILED FROM ZIP CODE 90067

UNITED STATES POSTAGE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SWEET EARTH, INC.
3080 HILLTOP RD
MOSS LANDING CA 95039

9590 9402 5816 0034 8456 11

2. Article Number (Transfer from service label)

7020 1290 0001 8879 4990

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

CERTIFIED MAIL®

7020 1290 0001 8879 4990

---

SWEET EARTH, INC.
3080 HILLTOP RD
MOSS LANDING CA 95039

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.60

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.85
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Hurdado v. Sweet
Earth, Inc.

Postage
$ 1.63

Total Postage and Fees
$ 8.08

Sent To
SWEET EARTH, INC.

Street and Apt. No., or PO Box No.
3080 HILLTOP RD

City, State, ZIP+4®
MOSS LANDING CA 95039

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

7020 1290 0001 8879 4990

---

tone
LAW APC
ury Park East, Ste 1000
s, CA 90067

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SWEET EARTH, INC.
3080 HILLTOP RD
MOSS LANDING CA 95039

9590 9402 5816 0034 8456 11

2. Article Number *(Transfer from service label)*

7020 1290 0001 8879 4990

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *A72-Covrd G*   ☑ Agent
   ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

*Security*   6/2/20

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☑ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt