Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Helga Hakimi (SBN 257381)
Helga.Hakimi@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Attorneys for Plaintiff Gabriela Soto Hurtado

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA SOTO HURTADO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SWEET EARTH, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:21-cv-04894-VKD<br><br>Assigned to the Hon. Beth Labson Freeman<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     June 13, 2024<br>Time:    9:00 a.m.<br>Place:   Courtroom 1 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 13, 2024 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-captioned court, located at 280 South 1st Street, San Jose, California 95113, the Honorable Beth Labson Freeman presiding, Plaintiff Gabriela Soto Hurtado will, and hereby does, move this Court for entry of an order and judgment granting final approval of the settlement and all agreed-upon terms therein. This Motion, unopposed by Defendant Sweet Earth, Inc., seeks final approval of: (1) the Joint Stipulation of Class Action and PAGA Settlement and Release, (2) settlement payments to Participating Class Members, PAGA Members, and the LWDA, and (3) costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action and PAGA Settlement; (3) the previously filed Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment; (4) the Declaration of Raul Perez; (5) the Declaration of Kaylie O'Connor on behalf of CPT Group, Inc., the settlement administrator; (6) the [Proposed] Order; (7) the [Proposed] Judgment; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: May 9, 2024                    Respectfully submitted,

                                       By: /s/ Orlando Villalba
                                           Raul Perez
                                           Orlando Villalba
                                           Helga Hakimi
                                           **CAPSTONE LAW APC**

                                           Attorney for Plaintiff Gabriela Soto Hurtado

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. FACTS AND PROCEDURE ............................................................................................... 3

    A.   Brief Overview of the Litigation ................................................................................. 3

    B.   The Parties Settled After Mediation ............................................................................ 3

    C.   The Proposed Settlement Fully Resolves Plaintiff's Claims ....................................... 4

        1.   Composition of the Settlement Class .............................................................. 4

        2.   Settlement Consideration ................................................................................. 4

        3.   Release by the Settlement Class ...................................................................... 4

        4.   Release by PAGA Members ............................................................................ 4

    D.   The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order ...................................................................................... 5

III. ARGUMENT ....................................................................................................................... 5

    A.   Class Certification Requirements Are Met ................................................................. 5

    B.   The Court Should Grant Final Approval of the Class Settlement ............................... 6

        1.   The Settlement Was Negotiated at Arm's Length by Experienced Counsel ................. 7

        2.   The Extent of Discovery Completed Supports Final Approval ...................... 7

        3.   The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation ......................................................................... 8

        4.   The Settlement Class Has Responded Positively to the Settlement ................ 9

        5.   The Court Should Approve the PAGA Settlement ....................................... 10

    C.   The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval ................................................................................ 12

IV. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 (C.D. Cal. Dec. 30, 2013) .................................................................................................. 12

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ........................................................................ 7

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21, 2014) .............................................................................................................................. 9

*Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021) .................................................. 11

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ..................................... 6

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................ 9

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................ 6

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................... 11

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) .................................................................................................. 11

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................. 6, 10

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ............................................................................................................................. 12

*In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) ................................ 9

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ..................................................................................................................... 7

*In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) .................................. 9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ..................................... 6

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................... 9

*In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002) .................................. 9

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) ............................................................................................................. 12

*Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................ 9

**CALIFORNIA STATE CASES**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ...................................................... 11

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12, 2011) ............................................................................................................................................. 12

*Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021) ..................................................... 11

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ............................................................... 12

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) ........................................ 11

**STATE STATUTES**

Cal. Lab. Code § 2699(h) ................................................................................................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On January 18, 2024, this Court granted preliminary approval of the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement" or "Settlement Agreement") and approved distribution of the Notice of Class Action Settlement to all Class Members. Class Members were given 45 days to opt out or object[1] to the Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiff Gabriela Soto Hurtado is pleased to report that: (1) only one person opted out of the Settlement Class; (2) no Class Members have objected to the Settlement to date; (3) the **entire Net Settlement Fund will be disbursed to all Participating Class Members**; (4) the average payment to Participating Class Members from the Net Settlement Fund is $982.77, and the highest is $2,511.10. (Declaration of Kaylie O'Connor ["O'Connor Decl."] ¶¶ 6-8.)

Plaintiff now moves for final approval of the class action and PAGA settlement. This motion is unopposed by Defendant Sweet Earth, Inc. (collectively with Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

(1) Conditional certification of a Settlement Class defined as: All persons employed in California by Defendant as hourly-paid employees at any time during the period from May 27, 2017 through May 21, 2022 ("Class Members").

(2) A **non-reversionary** Gross Settlement Amount of $575,000. The Gross Settlement Amount includes:

(a) A Net Settlement Fund (the Gross Settlement Amount minus the requested PAGA Settlement Amount, Attorneys' Fees and Costs, Settlement Administration Costs, and the Class Representative Enhancement Payment), which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period. **The Entire Net Settlement Fund will be paid to all Participating Class**

---

[1] The Class Notice also advised Class Members that in lieu of submitting written objections, they could instead appear at the Final Fairness Hearing to object to the Settlement.

            **Members.**

    (b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or $191,667), and litigation costs and expenses not to exceed $20,000, to Capstone Law APC ("Plaintiff's Counsel").

    (c)    Settlement administration costs of $10,000, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc. ("CPT").

    (d)    A $20,000 PAGA settlement, of which 75% ($15,000) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% ($5,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons employed in California by Defendant as hourly paid employees at any time during the period from May 27, 2020 through May 21, 2022. **The Entire PAGA Fund will be paid to all PAGA Members.**

    (e)    A Class Representative Enhancement Payment of $10,000 to Gabriela Soto Hurtado for her service on behalf of the Settlement Class, the risks she took in bringing the action on behalf of the class, and for a general release of all claims arising out of her employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the Hon. Dickran M. Tevrizian (Ret.), an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. This relief—averaging $982.77 per Class Member from the Net Settlement Fund—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement, Plaintiff respectfully requests that the Court: (1) grant this Motion for Final Approval of the Settlement

Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

## II. FACTS AND PROCEDURE

### A. Brief Overview of the Litigation

Defendant is a plant-based foods manufacturer based in Moss Landing, California, with products in 10,000 natural foods stores. Plaintiff worked for Defendant in California as a non-exempt, hourly paid Level II Sanitation/Dishwasher employee from approximately February 2019 to July 2020. (First Amended Complaint ["FAC"] ¶ 5.)

Plaintiff filed this wage and hour action against Defendant in the Monterey County Superior Court on May 27, 2021. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) Defendant removed the action to this Court on June 25, 2021. (*Id.*) Plaintiff's operative FAC alleges that Defendant violated the following sections of the California Labor Code (unless indicated otherwise, further statutory references are to the California Labor Code) and Business and Professions Code: (1) Sections 510 and 1198 (unpaid overtime); (2) Sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) Sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) Sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) Sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) Section 204 (failure to timely pay wages during employment); (7) Section 2802 (unreimbursed business expenses); (8) Sections 2698, *et seq.* (PAGA); (9) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (10) California Business & Professions Code sections 17200, *et seq.* (unfair business practices). (*Id.*)

### B. The Parties Settled After Mediation

On January 31, 2023, the Parties participated in a mediation with the Hon. Dickran M. Tevrizian (Ret.), an experienced mediator of wage and hour actions. (Perez Decl. ¶ 3.) Judge Tevrizian helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Judge Tevrizian's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiff's claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the Joint Stipulation of Class Action and PAGA Settlement and Release. (*Id.*) At all times, the

Parties' negotiations were adversarial and non-collusive. (*Id.*) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

### C.    The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1.    Composition of the Settlement Class

The proposed Settlement Class consists of all persons employed in California by Defendant as hourly-paid employees at any time during the period from May 27, 2017 through May 21, 2022. (Settlement Agreement ¶ 5.)

#### 2.    Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $575,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Class Members—meaning, all Class Members except those who submit timely and valid Requests for Exclusion—from the Net Settlement Fund; (2) $191,667 in attorneys' fees (i.e., one-third of the common fund) and up to $20,000 in litigation costs to Plaintiff's Counsel; (3) Settlement Administration Costs of $10,000; (4) a $15,000 payment to the LWDA and a $5,000 payment to PAGA Members; and (5) a Class Representative Enhancement Payment of $10,000 for Plaintiff's service on behalf of the Settlement Class, the risks she took in bringing her representative claims, and for a general release of all claims arising out of her employment with Defendant. (Settlement Agreement ¶¶ 33-37.)

Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, and the Class Representative Enhancement Payment, the Net Settlement Fund will be distributed to Participating Class Members in full. (Settlement Agreement ¶ 39.)

#### 3.    Release by the Settlement Class

In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will agree to release the Released Class Claims during the Class Period. (Settlement Agreement ¶¶ 25, 52.)

#### 4.    Release by PAGA Members

In exchange for the PAGA Settlement Amount, Plaintiff and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period. (Settlement Agreement ¶¶ 26, 53.)

**D.     The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services. (O'Connor Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order, will include: (1) printing and mailing the Notice of Class Action Settlement ("Notice"); (2) receiving and processing undeliverable Notices and locating updated addresses for Class Members; (3) receiving and validating Requests for Exclusion; (4) calculating and distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary reports and declarations; and (7) performing such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or that the Court orders. (*Id.*)

On January 18, 2024, CPT received the Class Notice prepared jointly by Plaintiff's Counsel and counsel for Defendant and approved by the Court. (O'Connor Decl. ¶ 3.) The Class Notice summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object. (*Id.*).

Separately, counsel for Defendant provided CPT with a mailing list (the "Class List"), which included each Class Member's full name, last known address, Social Security Numbers, and information necessary to calculate payments. (O'Connor Decl. ¶ 3.) The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 4.) On March 1, 2024, CPT mailed Class Notices to Class Members via First-Class U.S. mail. (*Id.*) Class Members were given 45 days to opt out or object to the Settlement. Plaintiff is pleased to report that only one person opted out of the Settlement Class, and no Class Members have objected to the Settlement to date. (*Id.* at ¶¶ 6-7.)

**III.    ARGUMENT**

**A.     Class Certification Requirements Are Met**

The Court certified the Settlement Class for settlement purposes upon Preliminary Approval, finding that requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt. No. 41.) Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*,

214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the Settlement Class.

### B. The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account: (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (c) the terms of any proposed award of attorney's fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011), *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting final approval.

### 1.   The Settlement Was Negotiated at Arm's Length by Experienced Counsel

The Settlement is the result of the Parties' arm's-length negotiations by experienced class action attorneys. Plaintiff is represented by Capstone Law APC. Plaintiff's Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 9-17, Ex. 1.) Defendant is represented by Sheppard, Mullin, Richter & Hampton LLP, a respected defense firm.

### 2.   The Extent of Discovery Completed Supports Final Approval

Based on their analysis of documents and class data produced by Defendant (including a sample of Class Members' time and pay records, and Defendant's labor policies and procedures handbooks), Plaintiff's Counsel were able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that culminated in the proposed settlement now before the

Court. (Perez Decl. ¶¶ 4-7.)

By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant. (*Id.* at ¶ 8.)

### 3. The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation

Based on their analysis of documents and data produced by Defendant, Plaintiff's Counsel were able to estimate the value Plaintiff's claims for settlement purposes (discussed in more detail in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, pp. 16-19; Dkt. No. 35). That estimate, however, assumed that each and every one of Plaintiff's claims would have been certified for class-wide resolution, that Plaintiff would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonableness, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiff's claims; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

After taking into account the Discount Factors, Plaintiff's Counsel determined that it would be

reasonable to settle for a fraction of Defendant's maximum potential exposure for the class claims (PAGA discussed in the following section), or approximately 18%. Such a discount is inherently reasonable given that Plaintiff would have had to overcome **multiple, dependent** contingencies to prevail on her claims. If anything, the projected odds for each of the above contingencies is generous to the class' position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these dispositive stages. Courts routinely approve settlements that provide a similar discounted range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

### 4. The Settlement Class Has Responded Positively to the Settlement

In evaluating the fairness of a Settlement, the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, only one person opted out of the Settlement Class, and no Class Members have objected to the Settlement to date. (O'Connor Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for the settlement where 80 out of 5,454 class members elected to opt out and nine class members objected); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4%

supported settlement). In other words, "[t]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The average settlement payment from the Net Settlement Fund is $982.77 and the highest is $2,511.10. (O'Connor Decl. ¶ 8.) This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 7, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct. Sept. 29, 2006) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65).

### 5. The Court Should Approve the PAGA Settlement

Pursuant to the Settlement Agreement, $20,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($15,000) will be paid directly to the LWDA, and the remaining 25% ($5,000) will be paid to PAGA Members. (Settlement Agreement ¶ 37.)

This result was reached after good-faith negotiation between the parties. The amount was valued as follows: Based on information and evidence produced by Defendant during discovery, Plaintiff's Counsel determined that aggrieved employees worked a combined total of approximately 5,000 pay periods during the PAGA statute of limitations period ("PAGA Period"). Statutory penalties would be calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

However, a number of courts have found that the "subsequent" penalty under PAGA applies only after a court or the Labor Commissioner determines that the employer has violated the Labor Code.

*See Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 356 (2021) ("the increased $200 civil penalty for 'subsequent violation[s]' does not apply unless [Plaintiff] presents evidence that the Labor Commission or a court notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil penalties" because the defendant was not given notice by the Labor Commissioner when the "subsequent" violations occurred). Under this line of cases, Defendant's exposure would be approximately $500,000 = 5,000 violative pay periods × $100.

It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000— **or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had been applied here, Plaintiff would have recovered only approximately $1,050 ($500,000 × 0.0021 reduction).

Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous other PAGA claims).

Plaintiff therefore determined an appropriate range of settlement for PAGA penalties as a percentage of the settlement range that was consistent with other hybrid class/PAGA settlements approved by California courts. Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

### C. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

Plaintiff requests final approval of settlement administration costs in the amount of $10,000. (O'Connor Decl. ¶ 10.) CPT has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* O'Connor Decl.) Accordingly, the $10,000 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

### IV. CONCLUSION

The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiff and her counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable.

Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement Agreement and enter judgment.

Dated: May 9, 2024

Respectfully submitted,

By: /s/ Orlando Villalba
Raul Perez
Orlando Villalba
Helga Hakimi
**CAPSTONE LAW APC**

Attorney for Plaintiff Gabriela Soto Hurtado